PEOPLE ex rel. SPEYER et al. v. MOSIER et al.

(Supreme Court, Special Term, Erie County. September 4, 1908.)

1. MUNICIPAL CORPORATIONS—USE OF PARKWAY—USE AS HIGHWAY—POWER OF PARK COMMISSIONERS.
   There is no statute under which the park commissioners of the city of Buffalo could make a strip of land across a public park a public highway; they having no proprietary interest in the park lots, and no power to dispose of any interest therein, or to consent that such lands be used as a public highway, as distinguished from park purposes, even though they formerly improved the land for that purpose.

2. HIGHWAYS—ESTABLISHMENT—MANNER OF ESTABLISHING.
   The fee or perpetual use of land for public highways may be acquired by eminent domain, dedication, or by prescription or usage.

3. MUNICIPAL CORPORATIONS — REGULATION OF PARKWAYS — POWERS OF PARK COMMISSIONERS—USE OF PARKWAYS.
   The rights, powers, and duties of the park commissioners of the city of Buffalo relate only to laying out, governing, and controlling the parkways and approaches, and incidentally the closing of public streets and permitting or refusing to permit such streets to connect with parkways or approaches; and hence they had exclusive control over a strip across a parkway to regulate its use, and could close it to use as a driveway by the general public.

Mandamus by the people, on the relation of Richard P. Speyer and another, against Charles Mosier and others, park commissioners of the city of Buffalo, to compel defendants to remove certain obstructions from a public park. On demurrer to the alternative writ. Judgment for defendants.

Simon Fleischman, for relators.
Samuel F. Moran, for defendants.

WHITE, J. The sole question to be determined is whether or not the relators state a legal grievance against the defendants. The relators own in fee a house and lot of substantial value, situated on the northeast corner of Humboldt Parkway and Oak Grove avenue, in the city of Buffalo. The defendants are the park commissioners of the city of Buffalo. Humboldt Parkway is one of the park approaches of the city. On and prior to November 8, 1899, said parkway consisted of a greensward 86 feet wide, the whole length of said parkway with driveways and sidewalks on each side of the greensward, each of which driveways is about 38 feet wide. The southwesterly and northeasterly boundary lines of Humboldt Parkway at the points where Oak Grove avenue intersect the same and for a considerable distance to the northwest and southeast thereof constitute the southwesterly

and northeasterly bounds of the park lands, of which the defendants have had jurisdiction at all times herein mentioned. On or about October 10, 1891, a map or plot was filed in Erie county clerk's office under cover 394 by the Parkway Land Company, which then owned the portions of Oak Grove avenue lying easterly and westerly of Humboldt Parkway, showing said avenue as being 60 feet wide, extending from Delevan avenue in a northerly direction continually as a street about 900 feet to and across Humboldt Parkway, and extending about 900 feet beyond said parkway to lands of the New York Central & Hudson River Railroad Company. In or about the year 1891 said Oak Grove avenue was opened and graded as a street 60 feet wide as laid out on said map, and it was thereafter used as a public highway for travel by pedestrians and vehicles. On or about June 5, 1893, a deed of said Oak Grove avenue extending from Delevan avenue to the southwesterly line of Humboldt Parkway was given by the owner thereof to the city of Buffalo, which deed was accepted by the city on or about April 3, 1899. Said Oak Grove avenue, both east and west of Humboldt Parkway, was marked upon the official assessors' maps of the city of Buffalo in ink as a public street within 15 years prior to January 1, 1895, and at all times since has been and now is so marked on said maps.

In or about the year 1891 there was laid out and opened a driveway with a footpath on each side thereof, said entire driveways and foot paths being the same width as Oak Grove avenue across said Humboldt Parkway, and at right angles thereto directly and uninterruptedly in a continuous straight line connecting that portion of Oak Grove avenue running to and intersecting the southeasterly line of said Humboldt Parkway with that portion of Oak Grove avenue running to and intersecting the northeasterly line of said Humboldt Parkway. Said continuation and connection of said Oak Grove avenue across said Humboldt Parkway was made as aforesaid with the consent and upon the authority of the defendants. Said continuation and connection of said Oak Grove avenue was thereupon and thereafter kept open continuously and uninterruptedly for public use and travel, both for vehicles and pedestrians, until some time in the year 1899. On or about November 1, 1898, the defendants decided and determined to close said Oak Grove avenue between the roadways on the easterly and westerly sides of Humboldt Parkway, but in March, 1899, they procured a map to be made and filed in their office showing said Oak Grove avenue as laid out across crossing and extending continuously across said Humboldt Parkway without obstruction of any kind, and the said map remains on file in said office. In 1899 the defendants excluded the public, and particularly the plaintiffs, from the use as a public highway of the strip of land extending across Humboldt Parkway on the lines of Oak Grove avenue prolonged from one side of said parkway to the other by means of barricades along the easterly line of the westerly driveway, and along the westerly line of the easterly driveway, which said barricades have ever since obstructed and prevented, and now obstruct and prevent, the use of said strip of land as a public highway. By reason of such obstructions and barricades, large numbers of

people living on and in the vicinity of Oak Grove avenue are seriously and substantially inconvenienced in traveling or going from one side of said Humboldt Parkway to the other. No application was ever made to the defendants or to the city of Buffalo to discontinue the use of the aforesaid strip of land as a public highway. The surrounding territory is substantially improved, and contains a considerable population, and the value of real estate in that section of the city has been substantially diminished by the erection and maintenance of said obstructions or barriers. The defendants excluded the public from the use of said strip of land, and set apart a portion of said Humboldt Parkway, including said strip, as a race course or speedway for the convenience and advantage of those owning or training horses. The use of the speedway for that purpose makes it practically impossible to use it for any other, and in dry weather clouds of dust arise from it and substantially damage surrounding property, and seriously inconvenience those residing in its vicinity. Between the years 1891 and 1899 many persons bought lots on Humboldt Parkway and Oak Grove avenue in the vicinity of the junction of them, relying on the said strip being thereafter used as a public highway.

If the strip of land in question ever became a public highway across Humboldt Parkway within the definition of that word under the law, the plaintiffs do state a legal grievance, and are entitled to the relief they seek; otherwise, they do not state a legal grievance, and the defendants are entitled to judgment on their demurrer. There is no statute under or by virtue of which the defendants could have made said strip of land a public highway. They had no proprietary right or interest in the park lands, nor the right or power to dispose of any such interest; nor did they have the right to consent that any of such lands be used otherwise than for park purposes as distinguished from public highway. In the creation and making of public highways, the fee or perpetual use is acquired by eminent domain proceedings, by dedication or by prescription, or user. In this case the defendants had nothing to dedicate. Assuming, then, that the defendants improved the strip of land in question with the intent thereby to make it a public highway and an integral part of Oak Grove avenue, their purpose was impossible of accomplishment for want of power. The said strip of land was and is an integral part and portion of Humboldt Parkway, which is an approach to the parks proper, and the defendants could not make or properly distinguish it as anything other than or different from that. The fact that even the city of Buffalo cannot create a public street or highway which shall intersect a parkway or approach without the consent of the defendants, and that the defendants have the power and right to close public streets that intersect the parkways and approaches, has no bearing upon the question of right and power to open and create a public highway across, a parkway or approach. The rights, powers, and duties of the defendants relate only to laying out, governing, and controlling the parks, parkways, and approaches and incidentally the closing of public streets and consenting or refusing, as the case may be, that such streets may or may not be made by the city of Buffalo to connect with such parkways or approaches. The

use by the public of the said strip of land in the way it did after it was opened up by the defendants was at all times as a part of Humboldt Parkway, and not as a part of a public street or highway independent of it.

The defendants at all times had exclusive jurisdiction and control over the strip as a part and parcel of said parkway, and could regulate its use in their discretion. If the defendants had no power to make and create a public highway out of the strip of land in question, and I think they had not, a consideration of the other propositions of law advanced and argued at length by counsel is unnecessary, and would be unprofitable, for the reason that the discussion of abstract law or adjudications not necessarily decisive almost inevitably tend to confusion and uncertainty. The defendants in this and in the Loring avenue case are entitled to judgments on their demurrers, with costs.